IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| JORDAN ROSENBLATT, Individually and On Behalf of All Others Similarly Situated,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>SENDGRID, INC., WARREN ADELMAN, AJAY AGARWAL, FRED BALL, BYRON DEETER, SAMEER DHOLAKIA, ANNE RAIMONDI, HILARY SCHNEIDER, SRI VISWANATH, TWILIO INC., and TOPAZ MERGER SUBSIDIARY, INC.,<br><br>　　　　Defendants. | Case No. _____<br><br>CLASS ACTION<br><br>JURY TRIAL DEMANDED |

## COMPLAINT FOR VIOLATION OF THE SECURITIES EXCHANGE ACT OF 1934

Plaintiff, by his undersigned attorneys, for this complaint against defendants, alleges upon personal knowledge with respect to himself, and upon information and belief based upon, *inter alia*, the investigation of counsel as to all other allegations herein, as follows:

## NATURE OF THE ACTION

1. This action stems from a proposed transaction announced on October 15, 2018 (the "Proposed Transaction"), pursuant to which SendGrid, Inc. ("SendGrid" or the "Company") will be acquired by Twilio Inc. ("Parent") and Topaz Merger Subsidiary, Inc. ("Merger Sub," and together with Parent, "Twilio").

2. On October 15, 2018, SendGrid's Board of Directors (the "Board" or "Individual Defendants") caused the Company to enter into an agreement and plan of merger with Twilio (the "Merger Agreement"). Pursuant to the terms of the Merger Agreement, SendGrid's stockholders will receive 0.485 shares of Parent common stock for each share of SendGrid they own.

3. On November 21, 2018, defendants filed a Form S-4 Registration Statement (the "Registration Statement") with the United States Securities and Exchange Commission (the "SEC") in connection with the Proposed Transaction.

4. The Registration Statement omits material information with respect to the Proposed Transaction, which renders the Registration Statement false and misleading. Accordingly, plaintiff alleges herein that defendants violated Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "1934 Act") in connection with the Registration Statement.

## JURISDICTION AND VENUE

5. This Court has jurisdiction over the claims asserted herein pursuant to Section 27 of the 1934 Act because the claims asserted herein arise under Sections 14(a) and 20(a) of the 1934 Act and Rule 14a-9.

6. This Court has jurisdiction over defendants because each defendant is either a corporation that conducts business in and maintains operations within this District, or is an individual with sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

7. Venue is proper under 28 U.S.C. § 1391(b) because a substantial portion of the transactions and wrongs complained of herein occurred in this District.

## PARTIES

8. Plaintiff is, and has been continuously throughout all times relevant hereto, the owner of SendGrid common stock.

9. Defendant SendGrid is a Delaware corporation and maintains its principal executive offices at 1801 California Street, Suite 500, Denver, Colorado 80202. SendGrid's common stock is traded on the NYSE under the ticker symbol "SEND." SendGrid is a party to

2

the Merger Agreement.

10. Defendant Warren Adelman is a director of the Company.

11. Defendant Ajay Agarwal is a director of the Company.

12. Defendant Fred Ball is a director of the Company.

13. Defendant Byron Deeter is a director of the Company.

14. Defendant Sameer Dholakia is a director of the Company.

15. Defendant Anne Raimondi is a director of the Company.

16. Defendant Hilary Schneider is a director of the Company.

17. Defendant Sri Viswanath is a director of the Company.

18. The defendants identified in paragraphs 10 through 17 are collectively referred to herein as the "Individual Defendants."

19. Defendant Parent is a Delaware corporation and a party to the Merger Agreement.

20. Defendant Merger Sub is a Delaware corporation, a wholly-owned subsidiary of Parent, and a party to the Merger Agreement.

## CLASS ACTION ALLEGATIONS

21. Plaintiff brings this action as a class action on behalf of himself and the other public stockholders of SendGrid (the "Class"). Excluded from the Class are defendants herein and any person, firm, trust, corporation, or other entity related to or affiliated with any defendant.

22. This action is properly maintainable as a class action.

23. The Class is so numerous that joinder of all members is impracticable. As of October 10, 2018, there were approximately 47,088,791 shares of SendGrid common stock outstanding, held by hundreds, if not thousands, of individuals and entities scattered throughout the country.

24. Questions of law and fact are common to the Class, including, among others: (i) whether defendants violated the 1934 Act; and (ii) whether defendants will irreparably harm plaintiff and the other members of the Class if defendants' conduct complained of herein continues.

25. Plaintiff is committed to prosecuting this action and has retained competent counsel experienced in litigation of this nature. Plaintiff's claims are typical of the claims of the other members of the Class and plaintiff has the same interests as the other members of the Class. Accordingly, plaintiff is an adequate representative of the Class and will fairly and adequately protect the interests of the Class.

26. The prosecution of separate actions by individual members of the Class would create the risk of inconsistent or varying adjudications that would establish incompatible standards of conduct for defendants, or adjudications that would, as a practical matter, be dispositive of the interests of individual members of the Class who are not parties to the adjudications or would substantially impair or impede those non-party Class members' ability to protect their interests.

27. Defendants have acted, or refused to act, on grounds generally applicable to the Class as a whole, and are causing injury to the entire Class. Therefore, final injunctive relief on behalf of the Class is appropriate.

## **SUBSTANTIVE ALLEGATIONS**

*Background of the Company and the Proposed Transaction*

28. SendGrid is a leading digital communications platform enabling businesses to engage with their customers via email reliably, effectively, and at scale.

29. A leader in email deliverability, SendGrid has processed over 45 billion emails each month for internet and mobile-based customers as well as more traditional enterprises.

30. On October 15, 2018, SendGrid's Board caused the Company to enter into the Merger Agreement with Twilio.

31. Pursuant to the terms of the Merger Agreement, SendGrid's stockholders will receive 0.485 shares of Parent common stock for each share of SendGrid they own.

32. According to the press release announcing the Proposed Transaction:

Twilio (NYSE:TWLO) and SendGrid today announced that they have entered into a definitive agreement for Twilio to acquire SendGrid in an all-stock transaction valued at approximately $2 billion. At the exchange ratio of 0.485 shares of Twilio Class A common stock per share of SendGrid common stock, this price equates to approximately $36.92 per share based on today's closing prices. The transaction is expected to close in the first half of 2019.

Adding the leading email API platform to the leading cloud communications platform can drive tremendous value to the combined customer bases. The resulting company would offer developers a single, best-in-class platform to manage all of their important communication channels -- voice, messaging, video, and now email as well. Together, the companies currently drive more than half a trillion customer interactions annualized*, and growing rapidly. . . .

Details Regarding the Proposed SendGrid Acquisition

The boards of directors of Twilio and SendGrid have each approved the transaction.

Under the terms of the transaction, Twilio Merger Subsidiary, Inc., a Delaware corporation and a wholly-owned subsidiary of Twilio, will be merged with and into SendGrid, with SendGrid surviving as a wholly-owned subsidiary of Twilio. At closing, each outstanding share of SendGrid common stock will be converted into the right to receive 0.485 shares of Twilio Class A common stock, which represents a per share price for SendGrid common stock of $36.92 based on the closing price of Twilio Class A common stock on October 15, 2018. The exchange ratio represents a 14% premium over the average exchange ratio for the ten calendar days ending, October 15, 2018.

The transaction is expected to close in the first half of 2019, subject to the satisfaction of customary closing conditions, including shareholder approvals by each of SendGrid's and Twilio's respective stockholders and the expiration of the applicable waiting period under the Hart-Scott-Rodino Antitrust Improvements Act. Certain stockholders of SendGrid owning approximately 6% of the outstanding SendGrid shares have entered into voting agreements and certain stockholders of Twilio who control approximately 33% of total Twilio voting power have entered into voting agreements, or proxies, pursuant to which they have

agreed, among other things, and subject to the terms and conditions of the agreements, to vote in favor of the SendGrid acquisition and the issuance of Twilio shares in connection with the SendGrid acquisition, respectively.

*The Registration Statement Omits Material Information, Rendering It False and Misleading*

33. Defendants filed the Registration Statement with the SEC in connection with the Proposed Transaction.

34. As set forth below, the Registration Statement omits material information with respect to the Proposed Transaction, which renders the Registration Statement false and misleading.

35. The Registration Statement omits material information regarding the Company's and Twilio's financial projections, as well as the analyses performed by the Company's financial advisor in connection with the Proposed Transaction, Morgan Stanley & Co. LLC ("Morgan Stanley").

36. With respect to the Company's financial projections, the Registration Statement fails to disclose, for all sets of projections: (i) all line items used to calculate EBITDA and unlevered free cash flow, including depreciation and amortization; and (ii) a reconciliation of all non-GAAP to GAAP metrics.

37. With respect to Twilio's financial projections, the Registration Statement fails to disclose, for all sets of projections: (i) all line items used to calculate EBITDA and unlevered free cash flow, including depreciation and amortization; and (ii) a reconciliation of all non-GAAP to GAAP metrics.

38. With respect to Morgan Stanley's SendGrid Discounted Equity Value Analysis, the Registration Statement fails to disclose the individual inputs and assumptions underlying the discount rate of 11.8%

39. With respect to Morgan Stanley's Twilio Discounted Equity Value Analysis, the Registration Statement fails to disclose the individual inputs and assumptions underlying the discount rate of 10.4%

40. With respect to Morgan Stanley's SendGrid Discounted Cash Flow Analysis, the Registration Statement fails to disclose: (i) the terminal values for SendGrid; (ii) the individual inputs and assumptions underlying the range of discount rates of 10.8% to 12.8% and the range of perpetual growth rates of 3.0% to 4.0%; and (iii) SendGrid's cash and outstanding debt.

41. With respect to Morgan Stanley's Twilio Discounted Cash Flow Analysis, the Registration Statement fails to disclose: (i) the terminal values for Twilio; (ii) the individual inputs and assumptions underlying the range of discount rates of 9.2% to 11.1% and the range of perpetual growth rates of 3.0% to 4.0%; and (iii) Twilio's net cash and outstanding debt.

42. With respect to Morgan Stanley's Precedent Transaction Multiples Analysis, the Registration Statement fails to disclose the individual multiples and financial metrics for the transactions observed by Morgan Stanley in the analysis.

43. With respect to Morgan Stanley's analysis of Analyst Price Targets, the Registration Statement fails to disclose the individual price targets for the Company and Twilio as observed by Morgan Stanley in the analysis and the sources thereof.

44. The disclosure of projected financial information is material because it provides stockholders with a basis to project the future financial performance of a company, and allows stockholders to better understand the financial analyses performed by the company's financial advisor in support of its fairness opinion. Moreover, when a banker's endorsement of the fairness of a transaction is touted to shareholders, the valuation methods used to arrive at that opinion as well as the key inputs and range of ultimate values generated by those analyses must also be fairly

7

disclosed.

45. The Registration Statement also omits material information regarding potential conflicts of interest of Morgan Stanley.

46. The Registration Statement fails to disclose whether Morgan Stanley has provided past services to Twilio or its affiliates, as well as the timing and nature of such services and the amount of compensation received by Morgan Stanley for such services.

47. The Registration Statement fails to disclose the timing and nature of the past services provided by Morgan Stanley to SendGrid.

48. Full disclosure of investment banker compensation and all potential conflicts is required due to the central role played by investment banks in the evaluation, exploration, selection, and implementation of strategic alternatives.

49. The omission of the above-referenced material information renders the Registration Statement false and misleading, including, *inter alia*, the following sections of the Registration Statement: (i) Background of the Merger; (ii) SendGrid's Reasons for the Merger; Recommendation of the Merger by the SendGrid Board; (iii) Certain Unaudited Prospective Financial Information Prepared by Twilio Management; (iv) Certain Unaudited Prospective Financial Information Prepared by SendGrid Management; and (v) Opinion of SendGrid's Financial Advisor, Morgan Stanley & Co. LLC.

50. The above-referenced omitted information, if disclosed, would significantly alter the total mix of information available to the Company's stockholders.

## COUNT I

**Claim for Violation of Section 14(a) of the 1934 Act and Rule 14a-9 Promulgated Thereunder Against the Individual Defendants and SendGrid**

51. Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

8

52. The Individual Defendants disseminated the false and misleading Registration Statement, which contained statements that, in violation of Section 14(a) of the 1934 Act and Rule 14a-9, in light of the circumstances under which they were made, omitted to state material facts necessary to make the statements therein not materially false or misleading. SendGrid is liable as the issuer of these statements.

53. The Registration Statement was prepared, reviewed, and/or disseminated by the Individual Defendants. By virtue of their positions within the Company, the Individual Defendants were aware of this information and their duty to disclose this information in the Registration Statement.

54. The Individual Defendants were at least negligent in filing the Registration Statement with these materially false and misleading statements.

55. The omissions and false and misleading statements in the Registration Statement are material in that a reasonable stockholder will consider them important in deciding how to vote on the Proposed Transaction. In addition, a reasonable investor will view a full and accurate disclosure as significantly altering the total mix of information made available in the Registration Statement and in other information reasonably available to stockholders.

56. The Registration Statement is an essential link in causing plaintiff and the Company's stockholders to approve the Proposed Transaction.

57. By reason of the foregoing, defendants violated Section 14(a) of the 1934 Act and Rule 14a-9 promulgated thereunder.

58. Because of the false and misleading statements in the Registration Statement, plaintiff and the Class are threatened with irreparable harm.

## COUNT II

**Claim for Violation of Section 20(a) of the 1934 Act
Against the Individual Defendants and Twilio**

59. Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

60. The Individual Defendants and Twilio acted as controlling persons of SendGrid within the meaning of Section 20(a) of the 1934 Act as alleged herein. By virtue of their positions as officers and/or directors of SendGrid and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Registration Statement, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that plaintiff contends are false and misleading.

61. Each of the Individual Defendants and Twilio was provided with or had unlimited access to copies of the Registration Statement alleged by plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause them to be corrected.

62. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control and influence the particular transactions giving rise to the violations as alleged herein, and exercised the same. The Registration Statement contains the unanimous recommendation of the Individual Defendants to approve the Proposed Transaction. They were thus directly involved in the making of the Registration Statement.

63. Twilio also had direct supervisory control over the composition of the Registration Statement and the information disclosed therein, as well as the information that was omitted and/or misrepresented in the Registration Statement.

64. By virtue of the foregoing, the Individual Defendants and Twilio violated Section 20(a) of the 1934 Act.

65. As set forth above, the Individual Defendants and Twilio had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) of the 1934 Act and Rule 14a-9, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the 1934 Act. As a direct and proximate result of defendants' conduct, plaintiff and the Class are threatened with irreparable harm.

## PRAYER FOR RELIEF

**WHEREFORE**, plaintiff prays for judgment and relief as follows:

A. Preliminarily and permanently enjoining defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction;

B. In the event defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages;

C. Directing the Individual Defendants to disseminate a Registration Statement that does not contain any untrue statements of material fact and that states all material facts required in it or necessary to make the statements contained therein not misleading;

D. Declaring that defendants violated Sections 14(a) and/or 20(a) of the 1934 Act, as well as Rule 14a-9 promulgated thereunder;

E. Awarding plaintiff the costs of this action, including reasonable allowance for plaintiff's attorneys' and experts' fees; and

F. Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff hereby requests a trial by jury on all issues so triable.

Dated: December 5, 2018  **RIGRODSKY & LONG, P.A.**

By: */s/ Gina M. Serra*
Seth D. Rigrodsky (#3147)
Brian D. Long (#4347)
Gina M. Serra (#5387)
300 Delaware Avenue, Suite 1220
Wilmington, DE 19801
Telephone: (302) 295-5310
Facsimile: (302) 654-7530
Email: sdr@rl-legal.com
Email: bdl@rl-legal.com
Email: gms@rl-legal.com

**OF COUNSEL:**

**RM LAW, P.C.**
Richard A. Maniskas
1055 Westlakes Drive, Suite 300
Berwyn, PA 19312
Telephone: (484) 324-6800
Facsimile: (484) 631-1305
Email: rm@maniskas.com

*Attorneys for Plaintiff*